# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MICHAEL A. FALANA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case 1:14-cv-00253 (RBW)** |
| **v.** | ) | |
| | ) | |
| **THE DEPARTMENT OF THE NAVY AND** | ) | |
| **THE BOARD FOR CORRECTION OF** | ) | |
| **NAVAL RECORDS** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR SUMMARY JUDGMENT

The Defendants, Department of the Navy and the Board for Correction of Naval Records ("BCNR"), respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss that part of Plaintiff's complaint requesting a conviction at a military Special Court-Martial for unauthorized absence ("UA") and uttering bad checks/dishonorably failing to maintain sufficient funds be overturned. The Administrative Procedure Act ("APA") expressly excludes the review of courts-martial from its purview, except to review statutorily limited actions military boards for correction of records may take which involve courts-martial.[1] Additionally, the Defendants respectfully move for summary judgment pursuant to Fed. R. Civ. P. 56 of the BCNR's decision to deny the Plaintiff's requests for court-martial clemency and other corrections/assignments of error to his naval record pursuant to the APA because the Plaintiff has not shown that the

---

[1] Under 10 U.S.C. § 1552(f), with respect to courts-martial, a military correction board may only correct a record to reflect actions taken by *reviewing authorities* under the Uniform Code of Military Justice or action on the *sentence* of a court-martial for purposes of clemency (emphasis added).

BCNR's decision was arbitrary, capricious, or contrary to law.  The Administrative Record ("AR") was filed with the Court and served on Plaintiff on November 30, 2016.  ECF No. 19. Attachment A, hereto, contains the pages of the AR that have been relied on in this motion.

Because Plaintiff is incarcerated, undersigned counsel has not consulted with him in connection with the excerpts of the Administrative Record provided at Attachment A.  However, as the entire record has been provided to him as well as the Court, should Plaintiff find it necessary to cite to pages at ECF No. 19, and not found at Attachment A, Defendants respectfully requests that he be permitted to do so.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:       _____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W., Room E-4216
Washington, D.C. 20530
(202) 252-2526
Claire.whitaker@usdoj.gov

OF COUNSEL:

LCDR ADAM YOST, JAGC, USN
Office of the Judge Advocate General
General Litigation Division (Code 14)
U.S. Department of the Navy
1322 Patterson Avenue SE, Suite 3000
Washington Navy Yard, DC  20374

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL A. FALANA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )    **Case 1:14-cv-00253 (RBW)** |
| **v.** | ) |
| | ) |
| **THE DEPARTMENT OF THE NAVY AND** | ) |
| **THE BOARD FOR CORRECTION OF** | ) |
| **NAVAL RECORDS** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR SUMMARY JUDGMENT

The Court's review of Plaintiff's civil action is governed by the Administrative Procedure Act ("APA") 5 U.S.C. § 701 *et seq*,   The APA expressly excludes the review of courts-martial from its purview, except to review statutorily limited actions military boards for correction of records may take which involve courts-martial.   Accordingly, Plaintiff's claim involving his courts-martial is subject to dismissal pursuant to Fed. R. Civ. 12(b)(1).   Moreover, summary judgment is appropriate pursuant to Fed. R. Civ. P. 56 of the BCNR's decision to deny the Plaintiff's requests for court-martial clemency and other corrections/assignments of error to his naval record pursuant to the APA because the Plaintiff has not shown that the BCNR's decision was arbitrary, capricious, or contrary to law.

### STATEMENT OF THE FACTS

The Plaintiff, a former Marine Corps Private, enlisted and began a period of active duty service on February 23, 1988. Attachment A, hereto ("AR") at 283.  During the period from

March 1989 through June 1989, Plaintiff was found guilty of Non-Judicial Punishment ("NJP")[2]

on three separate occasions for violations of the Uniform Code of Military Justice ("UCMJ"),

including periods of unauthorized absence ("UA") under Article 86[3], insubordinate conduct

towards a warrant or non-commissioned officer under Article 91[4], and making a false official

statement under Article 107[5]. AR 353. Later, on 3-4 October 1991, for separate action, plaintiff

was charged at a Special Court-Martial with violating Article 86 ("unauthorized absence" or

"UA"), four specifications of Article 123a[6] ("Uttering Bad Checks"), and Article 134[7] ("altering

a public record"). AR 1-309, 353.

Plaintiff was found guilty of violating Article 86, one specification of Article 123a, three

specifications of the lesser included offense of Article 123a under Article 134 by dishonorably

failing to maintain sufficient funds, and not guilty of the Article 134 charge of altering a public

record. AR 279-280.  He was sentenced to a bad conduct discharge from the Marine Corps, five

months confinement, and reduction in paygrade to E-1.[8] AR 299.  On July 6, 1992, Plaintiff's

request for clemency to the Naval Clemency and Parole Board was denied.  AR 584-85.  On

---

[2] NJP is a form of punishment in the United States Armed Forces authorized by Article 15 of the
Uniform Code of Military Justice.  NJP permits commanders to administratively discipline
personnel for generally less serious infractions without convening a criminal courts-martial. 10
U.S.C. § 815.

[3] 10 U.S.C. § 886.

[4] 10 U.S.C. § 891.

[5] 10 U.S.C. § 907.

[6] 10 U.S.C. § 923a.

[7] 10 U.S.C. § 934.
[8] The lowest enlisted paygrade in the United States Marine Corps, the rank of Private.

December 16, 1992, the Navy-Marine Corps Court of Military Review[9] affirmed the findings of

guilt and sentence, opining that they were correct in law and fact.  AR 591-92.  Plaintiff's

appellate review was complete after failing to submit a petition for review to the Court of

Military Appeals ("CMA").[10] AR 579.  Plaintiff was separated from the Marine Corps with a bad

conduct discharge on July 8, 1993. AR 1156.

In 2009, Plaintiff submitted his first application to the BCNR seeking an upgrade of his

bad conduct discharge from the United States Marine Corps. AR 388.  On March 25, 2010, the

BCNR denied Plaintiff's application. AR 386-387.  In September 2012, Plaintiff submitted his

second application to the BCNR, again seeking that his bad conduct discharge be upgraded,

while also raising multiple additional alleged errors or injustices in his service record with a

request that they be corrected. AR 398, 400-411.  On December 18, 2012, the BCNR denied

Plaintiff's request for relief, treating his application as a request for reconsideration. AR 394.

In January 2014, Plaintiff filed suit in this Court seeking a determination under the APA

that the BCNR's denial of his request was arbitrary and capricious and concomitantly an order

for the BCNR to grant his requested relief.  *See* ECF No. 1 (Plaintiff's Original Complaint) at 5.

Later in 2014, Plaintiff and the Government jointly agreed to remand the case to the BCNR to

consider all of Petitioner's requested relief.  *See* ECF No. 9 (Motion for Remand of July 2,

2014), AR 325-330.  On December 11, 2014, the BCNR provided plaintiff's requested relief for

---

[9] The Navy and Marine Corps' intermediate appellate court for reviewing military court-martial convictions established under Congress' Article I powers.  This Court has since been renamed the Navy-Marine Corps Court of Criminal Appeals ("NMCCA").

[10] The military's highest appellate court, composed of civilian judges and established under Congress' Article I powers, which exercises appellate jurisdiction over all of the individual military services' intermediate appellate courts.  The Court was renamed the Court of Appeals of the Armed Forces (CAAF) in 1994.

two of the eleven assignments of error/injustice.  AR 517-521.  In 2015, Plaintiff and the Government jointly agreed to remand the case a second time to the BCNR to consider what was a timely filed rebuttal to a Headquarters Marine Corps advisory opinion (hereinafter HQMC advisory opinion) after the BCNR unintentionally failed to consider Petitioner's rebuttal to the HQMC advisory opinion in its December 11, 2014, decision denying most of Plaintiff's requested relief. *See* Plaintiff's Motion to Remand of February 23, 2015, Government's response to Plaintiff's motion not opposing a Remand, and Court's order of July 14, 2015 granting the Remand.  ECF Nos. 11, 12 and Minute Order of July 14, 2015, respectively.  Thus, per the Plaintiff's complaint and application to the board, the BCNR in 2016 consolidated and considered what amounted to eleven requests for correction of error or injustice as follows:

1) Correct an error in his record to reflect his UA period from February 24, 1989 – March 2, 1989 was only seven days instead of the currently documented nine days;
2) Correct an error in his record to expunge the UA of February 2, 1989 (and therefore the NJP that resulted of March 15, 1989) because the Plaintiff's absence was authorized due to medical issues;
3) Correct omissions in the Plaintiff's record to add an 'Expert Pistol Badge' and General's Commendation received at Camp Lejeune;
4) Correct an error in his record to expunge the UA period of April 9, 1991 – April 21, 1991 because the Plaintiff was on approved leave;
5) Overturn the Special Court-Martial finding of guilt related to Charge I (UA) for the period April 9, 1991 – April 21, 1991 because the Plaintiff was on approved leave;
6) Overturn the Special Court-Martial finding of guilt related to Charge II (uttering bad checks/dishonorably failing to maintain sufficient funds) because Plaintiff made his command aware of his financial problems;
7) Upgrade the characterization of service (bad conduct discharge) imposed at his Special Court-Martial due to allegations of reprisal, valid legal defense, and generally overturn the findings of the court-martial due to fundamental defects;
8) Overturn the adjudged Special Court-Martial punishment of five months confinement because this part of his sentence was overly harsh based on the findings of guilt;
9) Correct an error in his record to expunge the UA period from February 24, 1989 – March 2, 1989 entirely because Plaintiff's absence was authorized due to medical issues;
10) Correct an error in his record to expunge the UA period of June 3, 1989 – June 5, 1989 entirely because the UA was reprisal for failing to accept an administrative separation and because Plaintiff's absence was authorized due to medical issues;

11) Correct an error in the record to remove all three of Plaintiff's NJPs because they were the product of the command taking reprisal action against him for refusing to accept an administrative separation discharge;

AR 458-464.

The BCNR, in a detailed six-page opinion dated July 1, 2016, and approved by the General Counsel for the Assistant Secretary of the Navy on July 22, 2016, found the Plaintiff warranted complete relief for Numbers 1 and 2 above, and partial relief for that part of Number 3 above relating to the pistol badge, as the evidence supported the addition of a 'Marksman Pistol Badge', but not the more meritorious 'Expert Pistol Badge' which the Plaintiff requested.[11] AR 458-463. The BCNR denied all of the other relief requested by the Plaintiff in his reconsideration request and stated the following:

> The Board's reconsideration was done with specific emphasis on the following: (1) the factual accuracy of the Special Court-Martial proceedings to which the Petitioner was subject in 1991; (2) Petitioner's rebuttal, dated 20 October 2014, to the Advisory Opinion provided by Headquarters Marine Corps on 24 September 2014; (3) Petitioner's previously raised allegations of error and/or injustice in light of items (1) and (2); (4) BCNR's authority to grant relief to which it determines Petitioner is entitled; and (5) with detailed explanation of the rationale supporting each individual alleged error or injustice raised by the Petitioner.

AR 458.

## ARGUMENT

As a threshold matter, because the BCNR granted the Plaintiff's requested relief relating to the correction of the UA period from February 24, 1989 – March 2, 1989 to reflect seven total days UA instead of nine and the request to remove the February 2, 1989 UA and the subsequent

---

[11] The relief granted Plaintiff in the most recent 2016 BCNR decision mirrors the relief granted him in the December 11, 2014 BCNR decision (which unintentionally failed to consider Plaintiff's rebuttal to the HQMC advisory opinion) with one addition:  the approval of Plaintiff's request to overturn the February 2, 1989 UA and thus the removal of the resulting NJP of March 15, 1989.

NJP of March 15, 1989, those issues are now moot for purposes of this lawsuit.

Pursuant to Fed. R. Civ. P. 12(b)(1), a court must dismiss a case when it lacks subject matter jurisdiction. Jurisdiction is an independent, preliminary issue that is to be resolved before analyzing the merits of the Plaintiff's claims. *Greenhill v. Spellings*, 482 F.3d 569, 573 (D.C. Cir. 2007), citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 95 quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869).

A motion to dismiss under Fed.R.Civ.P. 12(b)(1) "presents a threshold challenge to the court's jurisdiction...." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *see also Grand Lodge Fraternal Order of Police v. Ashcroft*, 185 F. Supp.2d 9, 13 (D.D.C. 2001) (noting a Rule 12(b)(1) motion imposes an affirmative obligation on the court to ensure it is acting within its jurisdictional authority). Under Rule 12(b)(1), "it is presumed that a cause lies outside [a federal court's] limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S 375, 377 (1994), and the Plaintiff bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence. *See Moore v. Bush*, 535 F. Supp.2d 46, 47 (D.D.C. 2008). In deciding a motion to dismiss based upon lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint, but may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003), quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

When reviewing a motion to dismiss pursuant to Rule 12(b)(1), the Court is required to

accept as true all factual allegations contained in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). In spite of the favorable inferences that a Plaintiff receives on a motion to dismiss, it remains the Plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envt'l. Prot. Agency*, 121 F.Supp.2d 84, 90 (D.D.C. 2000); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002).

I.   **The Administrative Procedure Act Does Not Grant Jurisdiction Regarding the Plaintiff's Request That Aspects of his Special Court-Martial Conviction Be Overturned**

The Administrative Procedure Act ("APA") authorizes Federal Court review of Federal administrative actions and provides a limited waiver of sovereign immunity for Plaintiffs seeking relief from agency actions. 5 U.S.C. § 701 *et seq.* The APA, however, provides no waiver of sovereign immunity regarding the Plaintiff's request that the charges of UA and uttering bad checks / dishonorably failing to maintain sufficient funds in his account, of which he was found guilty at his Special Court-Martial in 1991, or more generally his Special Court-Martial conviction in its entirety due to fundamental defects, be overturned because the APA expressly excludes the review of courts-martial from its purview, 5 U.S.C. § 701(b)(1)(F).

The APA applies to agency action, "but does not include … courts-martial…" 5 U.S.C. § 701(b)(1)(F). The meaning of this exclusion was addressed in *McKinney v. Caldera*, 141 F. Supp. 2d 25, 26 (D.D.C. 2001), *aff'd McKinney v. White*, 291 F.3d 851 (D.C. Cir. 2002). In *McKinney*, the Plaintiff sought to have his court-martial conviction for obstruction of justice set aside under the APA. *McKinney*, 291 F.3d at 851. The Court of Appeals for the District of Columbia, however, found that "military law … is a jurisprudence which exists separate and

apart from the law that governs in our federal judicial establishment." *McKinney*, 291 F.3d at 853 (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 746 (1975)) (internal quotations omitted). "The acts of a court-martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts, by writ of prohibition or otherwise." *McKinney*, 291 F.3d at 853 quoting *Schlesinger*, 420 U.S. at 746. Only when there is a lack of jurisdiction or fundamental defect in the court-martial will a court-martial judgment be found void. *McKinney*, 291 F.3d at 853. Absent these two exceptions, Federal courts have no jurisdiction to review a court-martial conviction. *See McKinney*, 291 F.3d at 856.

The Plaintiff does not contest court-martial jurisdiction so the only question under *McKinney* is whether there was a fundamental defect in his court-martial. The question of whether or not an error is a "fundamental defect" turns on "the nature of the alleged defect, and the gravity of the harm from which relief is sought." *United States ex rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir. 2006) (quoting *Schlesinger*, 420 U.S. at 747). "Both factors must be assessed in light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress." *Id.* Non-habeas review is more deferential than the "full and fair consideration" test outlined in *Burns v. Wilson*, 346 U.S. 137 (1953). *New*, 448 F.3d at 408.

In the case *sub judice*, Plaintiff alleges there were "fundamental defects in his court-martial proceedings, which when taken in totality, call into question the basic fairness of [his] prosecution." ECF No. 16 (Plaintiff's September 15, 2016 brief re Motion for Order) at 5. The Plaintiff's complaint (and some of his past BCNR petitions) goes on to specifically mention two: that when the jury members of his Special Court-Martial found him "not guilty of the charge of altering a public record [his leave request], it also gave him a valid legal defense to the UA

charge - namely, [that] he was on authorized leave"; and that his conviction for uttering bad checks / dishonorably failing to maintain sufficient funds in his account was improper because he made his command aware of his financial issues. *Id.* at 6-7. These allegations are without merit.

Plaintiff argues that, because he was found not guilty of violating Article 134, UCMJ, (altering a public record), by law, he could not have been found guilty of the UA charge because the altering charge referred to a leave request which corresponded to a period of time right before the time period he was found guilty of being UA. He further alleges that his June 1991 Leave[12] and Earnings Statement (LES) shows he was on leave for the period for which he was convicted of being UA and, therefore, he could not have been found guilty. However, after a careful review of the facts, the Plaintiff's claim lacks merit. First, the record reflects that Plaintiff had an approved leave request from his chain of command in Japan to return to North Carolina for the period March 26, 1991 - April 9, 1991 to visit family and take care of some financial issues (not for the period March 26, 1991 – April 21, 1991). AR 151, 170. Second, evidence was introduced by the prosecution at Plaintiff's court-martial that the original leave request was altered after it was approved to reflect a start date of March 25, 1991[13] - one day ahead of the original start date - not that the end date of the leave was altered to extend his leave period from April 9, 1991 to April, 21, 1991. AR 151-153. Thus, the altering a public record charge referred specifically to the allegation that Plaintiff altered his leave request for the period March 26, 1991

---

[12] In the United States Military, 'leave' is permission from a member's chain of command to be away from one's unit for a specific period of time.

[13] The prosecutor in the case entered into evidence Plaintiff's original approved leave request, which showed the start date of his leave was altered from March 26 to March 25, along with a carbon copy of the approved leave request, kept by the Marine Corps, which did not show the alteration, as proof the Plaintiff, or someone at his behest, made the alteration without the approval of his chain of command in order to allow him to go on leave to North Carolina a day early.

- April 9, 1991 by changing the effective inception date of the leave authorized from March 26, 1991 to March 25, 1991. AR 102.  The period for which Plaintiff was found guilty of UA was April 9, 1991 - April 21, 1991, not March 25 or 26, 1991. AR 99, 279.

      Plaintiff testified in his own defense at the court-martial and stated his Officer-in-Charge ("OIC") at the time, Second Lieutenant Kane, told him prior to going on leave that it would be ok for him to extend his leave beyond April 9, 1991, if some of the issues he was dealing with necessitated it. AR 195.  However, that testimony was directly refuted when the Government called Second Lieutenant Kane, a Marine Corps commissioned officer, as a rebuttal witness who testified under oath that he never authorized an extension of Plaintiff's leave prior to his start date of March 26, 1991 'so long as the Plaintiff called back and requested it.' AR 231-232. Lieutenant Kane also testified, after directly supervising the Plaintiff for at least a month, that it was his opinion that the Plaintiff was an untruthful person: "he has zero credibility and I would not believe him under oath." AR at 233.   Lieutenant Kane further testified, and the Plaintiff admitted himself during the Government's cross-examination, that Lieutenant Kane and the Plaintiff spoke on the phone on April 11, 1991,[14] while Plaintiff was still in North Carolina and that Lieutenant Kane told him multiple times he was in a UA status and needed to return to Japan immediately. AR 213, 231. Despite that, Plaintiff did not turn himself in to Marine Corps authorities until April 21, 1991. AR 219.  Finally, Plaintiff's own defense counsel even acknowledged during closing argument that he was not given permission to extend his leave during the phone call with Lieutenant Kane. AR 251-252.

      Thus, based on the evidence adduced at trial, it was entirely reasonable, and lawful, for

---

[14] The plaintiff recalled having this phone conversation with Lieutenant Kane on April 9, 1991, and not April 11, 1991, but did admit the phone call took place.

the jury members at Plaintiff's Special Court-Martial to find him guilty of the UA charge for the period April 9, 1991 – April 21, 1991,[15] but not guilty of the altering a public record charge. Furthermore, Plaintiff can cite to no legal theory or point of law, given the facts in his case, which would preclude such a resolution of the unrelated charges. Plaintiff's assertion that his June 1991 LES statement proves he was on authorized leave also fails because a service-member's chain of command authorizes or denies leave, not a post-hoc administratively generated LES, a fact essentially admitted to by the Plaintiff under oath, as exhibited during the following questioning:

> Q: What's your understanding of leave policy in the Marine Corps? Whose responsibility is it to ensure that the time that your leave starts and stops is understood and followed?
> A: I would say sir, with the leave papers themselves. As stated on the leave papers, it's my duty to make sure that…to get back in a timely manner is my responsibility. But as far as an extension goes, it is still my responsibility to get back within the time period of the extension.
> Q: Ok, so your answer to the question is that it is your responsibility to understand what your allotted amount of leave is?
> A: Yes.
> Q: That leave you've been granted?
> A: Yes sir.
> And it's also your responsibility to follow that limit of the amount of leave and get back within the time period that's allowed?
> A: Yes sir, and the instructions that you get will give the amount of time you'd been given to take leave.

AR at 207-08.

Furthermore, the LES statement for the actual month Plaintiff was UA, April 1991, and the following month, May 1991, specifically reflect and document that his period of UA started

---

[15] Indeed, the jury members could have reasonably and lawfully come to this conclusion if they were convinced beyond a reasonable doubt that the Plaintiff was lying when he testified that Lieutenant Kane gave him verbal permission to extend his leave prior to going on leave on March 26, 1991, so long as he called to check in and request it, which was very plausible given Lieutenant Kane's rebuttal testimony, or also if they believed beyond a reasonable doubt that the phone call with Lieutenant Kane occurred on April 9, 1991, and Plaintiff was told he was in a UA status and needed to return, which is exactly what the Plaintiff testified.

on April 9, 1991 and ended on April 21, 1991. AR 32, 34.  Additionally, the LES Plaintiff relies upon, which is an annual LES that also covers specifically the month of June, does not classify that Plaintiff was in an approved leave status during his period of UA in April as he asserts – it states the UA time period was also accounted as 'NON ACCR', which is short for 'non-accrued leave', meaning the member had not yet earned the time needed to be away from his unit for this period and therefore his UA period made him go negative or 'in the hole' on his leave balance.[16] AR 36.  Moreover, it's clear from their inclusion in the record (and entered in evidence during sentencing as a defense exhibit) that Plaintiff's defense counsel had access to all of his LES statements prior to his Special Court-Martial.

    In sum, the prosecutor introduced documentary and testimonial evidence that overwhelmingly showed the Plaintiff was in a UA status for the period April 9, 1991 – April 21, 1991. *See* AR 14-15 (approved leave statement for period March 26, 1991 – April 9, 1991 only); AR 16-17 (plaintiff's Marine Corps service record book entry documenting the UA period April 9 1991-April 21, 1991); AR 150-168 (testimony of Warrant Officer Mather, Plaintiff's Battalion Personnel Officer); AR 169-171 (testimony of Captain Hickey, Plaintiff's Commanding Officer); AR 187-223 (Plaintiff's own testimony); AR 230-235 (rebuttal testimony of Lieutenant Kane, Plaintiff's OIC).   Thus, the court-martial's findings evince, contrary to the Plaintiff's assertions, not a fundamental defect as required by *Schlesinger*, but a careful and discerning deliberation by the jury members who ultimately found the prosecution failed to meet its burden with respect to the altering a record charge while being convinced beyond a reasonable doubt by the voluminous amount of evidence to convict the plaintiff of the UA charge.

    Moreover, the jury members' decision to find the Plaintiff guilty of uttering bad checks /

---

[16] A servicemember earns 2.5 days per month for a total of 30 days of annual leave per year.

dishonorably failing to maintain sufficient funds was in accordance with the law because, contrary to the Plaintiff's assertion, giving notice to your chain of command about your financial difficulties is not a valid legal defense and therefore does not absolve one from guilt for uttering bad checks or dishonorably failing to maintain sufficient funds in a personal account from which a servicemember is drawing funds.  Finally, his conviction was reviewed by the Navy-Marine Corps Court of Military Review, which independently found no errors in the Plaintiff's trial.  AR 591-592.

Because the Plaintiff has not shown that there is a fundamental defect regarding the findings of guilt relating to the UA charge,[17] the uttering bad checks/dishonorably failing to maintain sufficient funds specifications, or the overall Special Court-Martial in general, the Court should accord deference to "the judgments of the carefully designed military justice system established by Congress," *United States ex rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir. 2006) quoting *Schlesinger v. Councilman*, 420 U.S. 738, 747 (1975), and grant the Defendant's motion to dismiss as it relates to this requested relief.

## II.    The Decision of the BCNR To Deny the Plaintiff's Request for Court-Martial Clemency or Other Requested Relief From Alleged Errors or Injustices Was Not Arbitrary, Capricious, Or Contrary to Law

In a case brought under the APA, the usual standard of review for a summary judgment motion under Federal Rule of Civil Procedure 56(c) does not apply "because of the limited role of a court in reviewing the administrative record."  *Powers v. Donley*, 844 F. Supp. 2d 65, 68 (D.D.C. 2012); *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006).  Instead, a

---

[17] Removing the UA charge from the plaintiff's record for the period April 9, 1991 – April 21, 1991 is synonymous with overturning the findings of guilt at his Special Court-Martial, thus, the Court's dismissal for lack of jurisdiction would address both of plaintiff's requests for relief relating to this UA period.

motion for summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Sierra Club*, 459 F. Supp. 2d at 90 (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)); *see, e.g.*, *Southeast Conference v. Vilsack*, No. 08-1598 (JDB), 2010 WL 537562 at *5 (D.D.C. Feb. 17, 2010). This is because the district court judge "…sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083-84 (D.C. Cir. 2001); *James Madison Ltd. bv Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996).

The Secretary of the Navy may correct a record when he "considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). Under the APA, judicial review of the Secretary's decision examines whether the decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence. *See* 5 U.S.C. § 706; *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *Cone v. Caldera*, 223 F.3d 789, 792-93 (D.C. Cir. 2000). This review is "narrow, and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Charette v. Walker*, 996 F. Supp. 43, 50 (D.D.C. 1998) (instructing that the "function of [the Court] is not to serve as a super correction board that reweighs the evidence"). If the record contains evidence a reasonable mind might accept, the Court must accept the Secretary's findings. *See Roberts v. Harvey*, 441 F. Supp. 2d 111, 118 (D.D.C. 2006); *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986).

Decisions of military correction boards and the secretaries of the military departments are entitled to a higher level of deference than agency decisions in non-military cases. *See Cargill v. Marsh*, 902 F.2d 1006, 1008 (D.C. Cir. 1990) ("heightened deference"); *Viles v. Ball*, 872 F.2d 491, 495 (D.C. Cir. 1989) ("exceptionally deferential"); *Escobedo v. Green*, 602 F. Supp. 2d

244, 248-49 (D.D.C. 2009) (instructing that "military boards are entitled to even greater deference than civilian administrative agencies" so as to "ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence").

Thus, courts have adopted an "unusually deferential" standard of review that "substantially restrict[s] the authority of the reviewing court to upset the Secretary's determination." *Powers v. Donley*, 844 F. Supp. 2d at 70 (*citing Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1515 (D.C. Cir. 1989) (Given the Secretary's broad discretion, and the extreme deference he is correspondingly owed, the D.C. Circuit has stated that "perhaps only the most egregious decisions may be prevented under such a deferential standard of review")). "A party seeking review of a board decision bears the burden of overcoming 'the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully and in good faith.'" *Roberts*, 441 F. Supp. 2d at 118 (quoting *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997)); *see also Escobedo*, 602 F. Supp. 2d at 248 (observing that a military correction board's decision is "entitled to a presumption of regularity"). The Secretary must only provide a rational explanation based on the record evidence and this Court need only determine "whether the Secretary's decision making process was deficient, not whether his decision was correct." *Kreis*, 866 F.2d at 1511. The Plaintiff bears the burden of proving "by cogent and clearly convincing evidence" that the decision was the result of a material legal error or injustice. *McDougall v. Widnall*, 20 F. Supp. 2d 78, 82 (D.D.C. 1998).

In short, the Court's task in reviewing military personnel decisions under the APA is to determine "whether the decision making process was deficient" -- that is, whether the BCNR or

the Secretary followed proper procedure, applied facts rationally connected to its decision, and provided a reasoned basis for its decision -- "not whether [the] decision was correct." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1405-06 (D.C. Cir. 1995) (quoting *Kreis*, 866 F.2d at 1511); *see also Motor Vehicle Mfrs. Assn.*, 463 U.S. at 43.

A. <u>The BCNR's Decision to Deny Plaintiff's Request for Clemency With Regards to his Court-Martial Punishment of a Bad Conduct Discharge and Five Months Confinement Was Not Arbitrary, Capricious, or Contrary to Law</u>

In this case, the Plaintiff has not met the burden to show by cogent and clearly convincing evidence that the decisions of the BCNR were arbitrary, capricious, or contrary to law. The BCNR had authority to review parts of the Plaintiff's petition for relief pursuant to 10 U.S.C. § 1552. However, as previously discussed in detail, the BCNR's ability to review petitions pertaining to courts-martial is limited by 10 U.S.C. § 1552(f) which states: "with respect to records of courts-martial and related administrative records pertaining to courts-martial cases tried or reviewed under chapter 47 of [Title 10] . . . action under subsection (a) may extend only to (1) correction of a record to reflect actions taken by reviewing authorities under chapter 47 of this title . . .; or (2) action on the sentence of a court-martial for purposes of clemency." 10 U.S.C. § 1552(f). Therefore, when reviewing petitions which pertain to courts-martial, the BCNR only has the authority to either 1) correct a record to reflect actions already taken by reviewing authorities within the court-martial system established by Congress or 2) consider the petition as a request for clemency. In this case, no record correction was necessary to effectuate actions taken by reviewing authorities within the court-martial system. As a result, the BCNR did not have the authority to expunge the Special Court-Martial conviction from the Plaintiff's record or overturn any of the individual findings of guilt and was required to consider the plaintiff's requested relief as it related to the Special Court-Martial as a request for clemency.

16

*See* 10 U.S.C. § 1552(f).

While reviewing that part of the Plaintiff's petition to upgrade his characterization of service and correct the alleged injustice related to the five months of confinement adjudged at his special court-martial, the BCNR considered the Plaintiff's application, "naval record, court filings, applicable statutes, regulations, policies…allegations of reprisal, assertions of valid legal defenses, the findings of the Special Court-Martial, Plaintiff's testimony and defense evidence submitted at trial, record of the appellate review, the presumption of regularity, together with all material submitted in support thereof." AR 460-461. Additionally, the BCNR considered the record of trial from the Plaintiff's Special Court-Martial conviction. AR 1-309. The record of trial also contained the mitigating evidence submitted by the Plaintiff during the sentencing portion of his court-martial, to include excerpts from his LESs and Department of Defense forms to show that the Plaintiff had paid restitution for the bad checks he had written and testimony from three fellow servicemembers as evidence of his good military character. AR 282-291. Plaintiff also testified on his own behalf during the sentencing portion. AR 291-292.

As a threshold matter, it bears pointing out for the Court that in the Plaintiff's first petition to the BCNR for an upgrade to his discharge, he frankly admitted his request for an upgrade was for "no other reason" than to attempt to "correct the mess he had made of his life." AR 319, 388. In this case, the BCNR denied the Plaintiff's petition for an upgrade to his characterization of service and his five[18] months of adjudged confinement. AR 460-461. In its decision letter, as it relates to the request to upgrade his characterization of service, the BCNR "concluded that the court-martial and subsequent reviews were conducted with due diligence and

---

[18] The BCNR petition erroneously stated the Plaintiff was sentenced to six months confinement. This is a scrivener's error and instead reflects the maximum sentence the jury members could have awarded the Plaintiff based on the crimes for which he was found guilty.

the findings of guilty warrant Petitioner's current characterization of service." AR 460.  The

decision letter further opined, as it relates to the alleged injustice in the record related to the five

months' confinement: "the board considered Petitioner's assertions and determined that the

Court's findings of guilty for the charges were sufficient to merit five months confinement (and

thus no relief was warranted)." AR 461.  Moreover, it is clear from the record that the jury

members did show some leniency in sentencing at the Plaintiff's court-martial – the maximum

punishment authorized was six months of confinement, and he received only five.  The Board

was further persuaded by the Navy-Marine Corps Court of Military Review's affirmance of the

findings of guilt and sentence. AR 591-592.  The BCNR "followed proper procedure, applied

facts rationally connected to its decision, and provided a reasoned basis for its decision…"

*Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1405-06 (D.C. Cir. 1995) (quoting *Kreis*, 866 F.2d at

1511).  Because the Plaintiff has not met his burden of proving "by cogent and clearly

convincing evidence" that the BCNR's decision was the result of a material legal error or

injustice, *McDougall v. Widnall*, 20 F. Supp. 2d 78, 82 (D.D.C. 1998), or that it was arbitrary,

capricious, or contrary to law, the Court should grant the Defendant's motion for summary

judgment.

      B. <u>The BCNR's Decision to Deny Plaintiff's Other Requested Relief For Alleged Errors
and Injustices In His Record Was Not Arbitrary, Capricious, or Contrary to Law</u>

      The Plaintiff has likewise not met the burden to show by cogent and clearly convincing

evidence that the decisions of the BCNR to deny the Plaintiff's remaining alleged errors and

injustices were arbitrary, capricious, or contrary to law.

          1.   Alleged injustice related to the UA from February 24, 1989 – March 2, 1989
             due to medical issues

      The BCNR's decision to deny plaintiff's request to remove the seven-day UA for the

period February 24, 1989 – March 2, 1989 was rational.  As the BCNR stated:

> The Board considered Petitioner's medical record, specifically taking into account the
> NAVCARE CLINIC Emergency Care and Medical Treatment Record dated 23 February
> 1989. The Board noted that Petitioner received medical treatment on 23 February 1989,
> and that the medical provider's disposition was referral to the "ER." Although the Board
> acknowledged the Petitioner's substantiated medical treatment on 23 February 1989, the
> Board determined the record did not establish that Petitioner was authorized a medical
> absence from 24 February 1989 to 2 March 1989.

Thus, the BCNR correctly found the medical documentation Plaintiff submitted in support of his

requested relief dated February 23, 1989 did not contain any provision authorizing 'no duty' or

'barracks confinement' which would have authorized his absence for the period February 24,

1989 – March 2, 1989. AR 362, 460.

> 2.  Alleged injustice related to the UA from June 3, 1989 – June 5, 1989 due to
>     medical issues

The BCNR's decision to deny Plaintiff's request to remove a three-day UA and the

resultant NJP was proper.  As the BCNR opined:

> The Board considered the allegations of injustice due to reprisal in light of the
> Petitioner's assertions of targeted punishment by the command due in part to Petitioner's
> refusal to accept an administrative separation. The Board considered Petitioner's medical
> record and administrative punishment history, and concluded that the evidence was
> insufficient to establish reprisal and to warrant removal of the June 1989 unauthorized
> absence from Petitioner's record.

In short, the BCNR correctly determined that the dates of the four medical record entries Plaintiff

submitted in support of this claim did not correspond to the dates he was UA – thus, his absence

from his unit/duties was not authorized and the subsequent NJP was proper. AR 364-367, 374,

460.

> 3.  Alleged injustice, removal of all NJPs because they were reprisals for refusing
>     to accept a medical administrative discharge

The BCNR's decision to deny Plaintiff's request to remove all of his NJPs because they

were reprisal action taken by the command against him was proper.  As the BCNR stated:

The majority considered Petitioner's multiple non-judicial punishment proceedings, his medical record, and his allegations of reprisal. On the basis of the record, the Board determined the evidence did not support the finding of reprisal against Petitioner. The Board noted lack of specific information indicating that the non-judicial punishment proceedings were acts of reprisal, and the records alone did not overcome the presumption of regularity.

AR 460.

> 4.   Alleged injustice, request inclusion of 'Expert Pistol Badge' and General's Commendation received at Camp Lejeune

The BCNR's decision to deny the Plaintiff's request to add an 'Expert Pistol Badge' (but grant partial relief by directing the addition of a 'Marksman Pistol Badge' to his record) and deny his request to add a General's Commendation were proper and in accordance with all record review board policies and procedures.  As the BCNR noted:

The Board considered the record, including the previous favorable (partial) BCNR determination.[19]  In concurrence with previous BCNR determination and the HQMC Advisory Opinion of 2014, the Board determined that relief was warranted with respect to the addition of the Pistol Rifle Badge. With respect to the General's Commendation, the Board concurred with the previous BCNR determination (no relief warranted).

Specifically, Plaintiff presented evidence that on September 9, 1988, he scored 256 on a pistol qualification test. AR 382.  Marines scoring between 245 and 305 are designated as 'Marksman."  AR 322.  Thus, the BCNR's decision to grant partial relief to add a 'Marksman Pistol Badge' was proper, but not to add an 'Expert Pistol Badge' as the Plaintiff requested.  Furthermore, Plaintiff provided no evidence to demonstrate that he was ever awarded a General's Commendation at Camp Lejeune. *Id.*

As evidenced by the detailed, six-page decision letter which addressed each of the

---

[19] This is in reference to the BCNR's December 11, 2014 decision in which it granted plaintiff's request to add a 'Marksman Pistol Badge.'  Also, while the BCNR decision here discusses the addition of the 'Pistol Rifle' Badge, that is in error.  The Pistol Badge and Rifle Badge are separate decorations.  In this case, at issue is the Plaintiff's Pistol Badge.  A Pistol Badge may then be further classified as Marksman or Expert, depending on the individual score a Marine shoots during a qualification test.

Plaintiff's requests for relief individually and adjudicated them in accordance with all governing policies, the record clearly reflects that the BCNR conducted a thorough, conscientious and rational review.  Moreover, the BCNR's grant of relief as it related to two (and also partial relief for approving the addition of the 'Marksman Pistol Badge') of the eleven counts of error further exhibits the rigor and good faith with which the correction board handled Plaintiff's case.  In sum, because the Plaintiff has not met his burden of proving "by cogent and clearly convincing evidence" that the BCNR's decisions which denied him relief were the result of a material legal error or injustice, *McDougall v. Widnall*, 20 F. Supp. 2d 78, 82 (D.D.C. 1998), or that it was arbitrary, capricious, or contrary to law, the Court should grant the Defendant's motion for summary judgment.

## CONCLUSION

Plaintiff has failed to meet the threshold requirement of establishing jurisdiction, specifically as it relates to his request to overturn his Special Court-Martial conviction in general, or specifically the UA or uttering a bad check/dishonorably failing to maintain sufficient funds convictions.  The APA does not provide jurisdiction for the Court to overturn or expunge the Plaintiff's Special Court-Martial conviction from his record.  As such, that part of his claim requesting such relief should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  Further, the Court should grant the Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 as it relates to the Special Court-Martial sentence clemency requests and the Plaintiff's other assignments of error/injustice because the BCNR's denial of those claims was not arbitrary, capricious, or contrary to law.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:    _____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W., Room E-4216
Washington, D.C. 20530
(202) 252-2526
Claire.whitaker@usdoj.gov

OF COUNSEL:

LCDR ADAM YOST, JAGC, USN
Office of the Judge Advocate General
General Litigation Division (Code 14)
U.S. Department of the Navy
1322 Patterson Avenue SE, Suite 3000
Washington Navy Yard, DC  20374

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 30, 2016, I caused to be

served by United States mail (first-class, postage prepaid), copies of the "DEFENDANTS'

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND

MOTION FOR SUMMARY JUDGMENT," addressed as follows:

> MICHAEL A. FALANA, *pro se*
> No. 267813
> Avon Park Correctional Institution
> 8100 Highway 64 East
> Avon Park, FL 33825


> _____/s/_____
> CLAIRE WHITAKER, D.C. Bar # 354530
> Assistant United States Attorney
> United States Attorney's Office
> 555 4th Street, N.W., Room E-4216
> Washington, D.C. 20530
> (202) 252-2526